J-S25015-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOSEPH W. BRIGGS | : | |
| | : | |
| Appellant | : | No. 100 WDA 2022 |

Appeal from the PCRA Order Entered December 15, 2021
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0012107-2003

BEFORE:  BENDER, P.J.E., DUBOW, J., and KING, J.

MEMORANDUM BY BENDER, P.J.E.:          **FILED: SEPTEMBER 16, 2022**

Appellant, Joseph W. Briggs, appeals from the post-conviction court's
December 15, 2021 order denying his petition filed under the Post Conviction
Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546.  After careful review, we affirm.

In 2006, Appellant was convicted by a jury of first-degree murder.  He
was subsequently sentenced to life imprisonment, without the possibility of
parole.  Appellant filed a direct appeal, and this Court affirmed his judgment
of sentence on June 11, 2008.  ***See Commonwealth v. Briggs***, 959 A.2d
457 (Pa. Super. 2008) (unpublished memorandum).  Although Appellant did
not immediately file a petition for allowance of appeal with our Supreme Court,
his right to do so was ultimately reinstated during post-conviction
proceedings.  Thereafter, Appellant filed a *nunc pro tunc* petition for allowance
of appeal, which our Supreme Court denied on July 2, 2013.  ***Commonwealth
v. Briggs***, 69 A.3d 599 (Pa. 2013).

On June 5, 2014, Appellant filed a timely, *pro se* PCRA petition. After delays not pertinent to the issue he raises herein, counsel was appointed and filed an amended petition on Appellant's behalf on February 24, 2021. Therein, Appellant asserted that his appellate counsel was ineffective for not arguing on appeal that the trial court erred by denying Appellant's request to waive his right to a jury trial. After the PCRA court conducted a hearing on September 20, 2021, it issued an order on January 14, 2022, denying Appellant's petition.

Appellant filed a timely notice of appeal, and he also timely complied with the PCRA court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. The court filed its Rule 1925(a) opinion on March 17, 2022. Herein, Appellant states one issue for our review:

I.      Did the [PCRA] court abuse its discretion in denying the PCRA petition, as amended, where [Appellant] established that counsel was ineffective for failing to raise a claim on appeal that the trial court abused its discretion in refusing to allow [Appellant] to waive a jury trial?

Appellant's Brief at 4 (unnecessary capitalization omitted).

"This Court's standard of review from the grant or denial of post-conviction relief is limited to examining whether the lower court's determination is supported by the evidence of record and whether it is free of legal error." *Commonwealth v. Morales*, 701 A.2d 516, 520 (Pa. 1997) (citing *Commonwealth v. Travaglia*, 661 A.2d 352, 356 n.4 (Pa. 1995)). Where, as here, a petitioner claims that he or she received ineffective

assistance of counsel, our Supreme Court has directed that the following standards apply:

> [A] PCRA petitioner will be granted relief only when he proves, by a preponderance of the evidence, that his conviction or sentence resulted from the "[i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S. § 9543(a)(2)(ii). "Counsel is presumed effective, and to rebut that presumption, the PCRA petitioner must demonstrate that counsel's performance was deficient and that such deficiency prejudiced him." [**Commonwealth v.**] **Colavita**, … 993 A.2d [874,] 886 [(Pa. 2010)] (citing **Strickland** [**v. Washington**, 466 U.S. 668 … (1984)]). In Pennsylvania, we have refined the **Strickland** performance and prejudice test into a three-part inquiry. **See** [**Commonwealth v.**] **Pierce**, [527 A.2d 973 (Pa. 1987)]. Thus, to prove counsel ineffective, the petitioner must show that: (1) his underlying claim is of arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) the petitioner suffered actual prejudice as a result. **Commonwealth v. Ali**, … 10 A.3d 282, 291 (Pa. 2010). "If a petitioner fails to prove any of these prongs, his claim fails." **Commonwealth v. Simpson**, … 66 A.3d 253, 260 ([Pa.] 2013) (citation omitted). Generally, counsel's assistance is deemed constitutionally effective if he chose a particular course of conduct that had some reasonable basis designed to effectuate his client's interests. **See Ali**, **supra**. Where matters of strategy and tactics are concerned, "a finding that a chosen strategy lacked a reasonable basis is not warranted unless it can be concluded that an alternative not chosen offered a potential for success substantially greater than the course actually pursued." **Colavita**, … 993 A.2d at 887 (quotation and quotation marks omitted). To demonstrate prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." **Commonwealth v. King**, … 57 A.3d 607, 613 ([Pa.] 2012) (quotation, quotation marks, and citation omitted). "'[A] reasonable probability is a probability that is sufficient to undermine confidence in the outcome of the proceeding.'" **Ali**, … 10 A.3d at 291 (quoting **Commonwealth v. Collins**, … 957 A.2d 237, 244 ([Pa.] 2008) (citing **Strickland**, 466 U.S. at 694….)).

*Commonwealth v. Spotz*, 84 A.3d 294, 311-12 (Pa. 2014).

Here, Appellant contends that his appellate counsel acted ineffectively by not challenging on appeal the trial court's denial of his request to waive his right to a jury trial. According to Appellant, he presented valid reasons for wanting to waive that right, including that he was afraid that jurors would not understand the different degrees of homicide, they would not be able to be fair and impartial considering the circumstances of his case, and they would be overly sympathetic to the victim. Appellant contends that the trial court summarily dismissed his request to waive his right to a jury without giving him an opportunity to elaborate on his reasons for wanting to do so. Consequently, Appellant insists that his appellate counsel acted ineffectively by not challenging the trial court's error in this regard on direct appeal. He maintains that counsel had no reasonable basis for not raising this issue, and he was prejudiced because he would have received a new trial had his attorney done so.

In assessing Appellant's issue, we have reviewed the certified record, the briefs of the parties, and the applicable law. Additionally, we have examined the well-reasoned opinion of the Honorable Susan Evashavik DiLucente of the Court of Common Pleas of Allegheny County. We conclude that Judge Evashavik DiLucente's comprehensive opinion accurately disposes of the issue presented by Appellant. Accordingly, we adopt Judge Evashavik DiLucente's opinion as our own and affirm the order denying Appellant's PCRA petition for the reasons set forth therein.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  09/16/2022

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA : CRIMINAL DIVISION

vs. : CP-02-CR-0012107-2003

JOSEPH W BRIGGS, :

**ORIGINAL**
Criminal Division
Dept. Of Court Record:
Allegheny County, P/

Defendant :

## OPINION AND ORDER TO TRANSMIT RECORD TO APPELLATE COURT

Defendant Joseph W. Briggs appeals the December 15, 2021, order (the

"Order") dismissing his amended Post-Conviction Relief Act petition (the

"Amended Petition"). He contends that this Court erred in concluding that

direct appeal counsel was not ineffective for failing to advance a claim that the

trial court wrongly denied Mr. Briggs' request for a bench trial. For the reasons

that follow, the Order should be affirmed.

### I.      Relevant Procedural Background

In September 2000, the Commonwealth charged Mr. Briggs with criminal

homicide for the death of Joseph Looney. Over three years later, Mr. Briggs was

located in Saudi Arabia and returned to Allegheny County for trial. Multiple

postponements occurred, and on January 6, 2006, Mr. Briggs – represented by

Christopher Conrad, Esquire – appeared before the Honorable Cheryl L. Allen for

a jury trial.

1

A mistrial was declared on the first day of trial. See January 5-6, 2006, Transcript at 118-119. Judge Allen and the parties intended to pick a new jury and to retry the case the following week. Id.

During that week, Mr. Briggs appeared before Judge Allen and sought leave to represent himself. See generally January 11-12, 2006, Transcript. The record reveals the following:

THE COURT: And just in my short period of exposure to you, I am convinced that you are highly intelligent. I'm convinced that you are well-read and that you're very knowledgeable about some things, but you're not a lawyer. Okay? And you are not a lawyer.

And even if you were a lawyer, representing yourself is not advisable, and even if you were a lawyer – but let's just start with the fact that you're not. Your courtroom experience, your experience in dealing with juries, cannot even begin to compare with your attorney's experience. And so I'm just wondering why you feel – why you want to make this move. I don't understand.

MR. CONRAD: I have a couple of questions to ask you.

Go ahead.

[MR. BRIGGS]: I think there's a possibility I can do life without parole.

THE COURT: Well, there's always that possibility. There's that possibility whether

2

> you're representing yourself or whether Mr. Conrad is representing you.
>
> I mean, you know – but it seems to me that your chances of – you cannot be better represented. And your experience as a trial lawyer and Mr. Conrad's experience as a trial lawyer cannot even begin to compare.

MR. CONRAD:       Judge, just so it's clear, without getting into what they are, 'cause I don't think that's appropriate, you[, Mr. Briggs,] have indicated to me there are certain tactical things that you feel that you could handle better representing yourself; is that right?

[MR. BRIGGS]:       Generally.

MR. CONRAD:       You've mentioned some of the things, but I really don't think it's appropriate to get into them here, but you have considered various tactical things that you would do representing yourself and how it might appeal to a jury that you feel that I could not be able to do as well; is that right?

[MR. BRIGGS]:       Yes. That's one of the things . . . .

Id. at 7-8.

After Mr. Briggs explained that one factor motivating his desire to proceed pro se was his belief that he could appeal to a jury better than Attorney Conrad, Judge Allen informed Mr. Briggs that if he thought he could "do a better job than [Attorney Conrad], then [he should] just do the better job, but the trial is

3

going forward. [She was] not postponing it." Id. at 38-39. Following further discussion between the parties and a lengthy colloquy of Mr. Briggs, Judge Allen ultimately agreed to permit Mr. Briggs to represent himself with Attorney Conrad as standby counsel. Id. at 60. She also appointed a private investigator for Mr. Briggs and permitted him to have increased time at the law library in the Allegheny County Jail ("ACJ"), where he was being housed. True to her word, Judge Allen also denied a request by Mr. Briggs to postpone the trial so that he could purportedly prepare for the same. Id. at 63-64.

Following jury selection several days later, Mr. Briggs appeared before Judge Allen, and the following occurred:

> MR. CONRAD: [The private investigator has not been able to meet with Mr. Briggs at the ACJ because the jail requires a certified order from the Court for such a meeting to occur.]
>
> * * *
>
> THE COURT: Thank you. The Court will provide the certified order. And the Court will give [the investigators] the opportunity to interview [and work with] Mr. Briggs. I don't see that necessarily as a reason to delay the Commonwealth's presentation of its case. I'm not sure how long your case is going to take. Given the totality of the circumstances, however, I will permit the interview – I will order the interview to take place well prior to Mr. Briggs beginning his defense.

4

MR. CONRAD: Did you understand that, [Mr. Briggs], so far? Do you understand about the investigator, why you didn't get to see him over the weekend, and that I have a certified order for them. Hopefully that will be sufficient now that court is in session. If there [is] a problem they can contact the Court directly to facilitate you being seen, okay.

MR. BRIGGS: Okay.

THE COURT: Anything else?

MR. CONRAD: Yes. He has other matters.

THE COURT: Okay.

MR. BRIGGS: The first is I never got the library time that the Court ordered. Trying to show every staff member at every CO.

THE COURT: . . . . I [will make sure the ACJ permits the library time]. Anything else?

MR. BRIGGS: Because of that, I didn't get a chance to do any work and was unable to go over the rules that I'm accountable for. Stand-by counsel never came, so I couldn't subpoena the witnesses that I do have. I brought their names and addresses today.

THE COURT: Well, the reason you have stand-by counsel is so that he can assist you with any rules that you need to be aware of.

MR. BRIGGS: Okay.

5

| | |
|---|---|
| THE COURT: | Again, I will provide the certified order for you to get the library time this week. |
| MR. BRIGGS: | What about to get the witnesses? I haven't had any time to get them. |
| THE COURT: | Well, that's what the investigator was for, and the investigator is going to have an opportunity to speak with you. And I told you, as I just said, you will have that opportunity to subpoena any witnesses that they can find before you begin the presentation of your defense. |
| MR. BRIGGS: | Which is one day. |
| THE COURT: | I don't know how long it is going to take the prosecution to complete its case. You know you have had five years. You have had at least three, so don't tell me about one day; but we are doing the best that we can. |
| MR. BRIGGS: | It is going to affect my ability to cross-examine. |
| THE COURT: | As I said before, you have had three years. I'm going to sign an order and have done an order for you to – for the investigator to speak with you today, and after the investigator speaks with you, presumably the investigator will have an opportunity to serve those subpoeanas. And I also said that we would make sure that these things happened before you had to begin your case; now that's all I can say to you and that's all – that's the best I can do. |
| MR. BRIGGS: | Okay. |

| | |
|---|---|
| THE COURT: | If you have an objection to this procedure, your objection is noted for the record. |
| MR. BRIGGS: | I object. |
| THE COURT: | All right. |
| MR. BRIGGS: | You know I haven't been able to try to procure my witnesses myself. |
| THE COURT: | We have been through that already. |
| MR. BRIGGS: | Okay. On Thursday[, January 12, 2006,] somebody jumped out the window on the jail and died. That's what everything is about here. There was a shake-down. Cops, they went through all my stuff and disorganized all my material. I have just been able to organize everything, so I'm not prepared to cross-examine the witnesses. I don't have my own defense witnesses. It is going to take more than a day or two. |
| THE COURT: | Your defense witnesses would not be taking the stand until after the prosecution has competed its entire case; therefore, as I told you, you would have an opportunity to prepare for that. |
| MR. BRIGGS: | Because despite how long this case has been going on, I haven't been counseled for the case. I just wanted to finish real quick. I haven't been counseled for the case. I'm just now taking the case from prior counsel. And I'm not ready to present a competent defense. . . . |
| | I just want to restate my position that I do not want to have a jury trial |

without being prepared. And I would like to just plead guilty but mentally ill.

THE COURT: I will not accept your guilty plea. You already stated that you're – on Friday or Thursday, I believe it is, when you were asked and given the colloquy with regard to your waiver of counsel, you stated that you were not suffering from any mental illness and you stated that under oath on the record.

MR. BRIGGS: I mean mentally ill at the time of the crime. I'm sorry.

THE COURT: Well, I'm not going to accept your guilty plea. We will proceed with a jury trial.

MR. BRIGGS: Then I would like to just go judge.

THE COURT: You would like to go what?

MR. BRIGGS: Bench trial.

THE COURT: I'm not going to proceed with a bench trial. I don't even believe that would be fair at this point. And I'm not – I cannot and will not accept your waiver of a jury trial.

MR. BRIGGS: I would like to demand my right to have new judge for the bench trial, if you won't accept the plea or –

THE COURT: There is no requirement that a judge accept a plea.

MR. BRIGGS: I have a statute here.

THE COURT: I am not going to accept your plea, and I'm not going to recuse myself.

8

We will proceed with the jury trial. Your objection is noted for the record.

* * *

MR. BRIGGS: I would really like to proceed bench trial. I'm not prepared for this jury trial – I'm not prepared for trial period. I would like to have a bench trial.

THE COURT: Well, I'm not going to accept your waiver of a jury trial. I'm not going to accept your guilty plea. We are going to proceed with the jury trial.

You have had three years to prepare for this trial. There have been many postponements. This is the date and time set aside for the trial. That's the way it is going to be. All right.

MR. BRIGGS: For the record, I would like to object to this jury, that I was clearly stressed out and unprepared for the picking of the jurors.

THE COURT: Well –

MR. BRIGGS: Under great anxiety.

THE COURT: I gave you plenty of opportunity to raise any objections to particular jurors serving on your jury. Your comment was repeatedly "no comment."

I told you on the day that you were selecting the jury that this was – that was the time to raise any objections. You did not raise any objections.

9

> You know, you put yourself in this position; I did not put you in this position. I did everything short of getting on my knees to beg you not to do this. But you're not going to tie up the court system any longer. You made the decision to proceed as your own – to proceed pro se. That was not what I would have liked to have seen you do, but you made that decision. I respect your decision. Now, we are going to trial.

January 17, 2006, Transcript at 4-20.

Trial ultimately commenced, and the jury convicted Mr. Briggs of first-degree murder. Judge Allen sentenced him to life imprisonment. Following the denial of post-sentence motions, Mr. Briggs – through Patrick Nightingale, Esquire – appealed his judgment of sentence to the Pennsylvania Superior Court, which docketed the matter at 2160 WDA 2006.

In Mr. Briggs' Pa.R.A.P. 1925(b) statement, Attorney Nightingale advanced many claims of error, including that Judge Allen erred in not permitting Mr. Briggs to proceed with a non-jury trial and that she erred by denying Mr. Briggs' request for a continuance after he elected to represent himself. Judge Allen addressed those and other related claims collectively, stating in her Pa.R.A.P. 1925(a) opinion:

> In his Statement of Matters Complained of on Appeal, [Mr. Briggs] states that the trial court erred in denying his request for a continuance to consult with experts regarding a plea of guilty but mentally ill. However, in his colloquy waiving representation, [Mr. Briggs] had stated under oath that he was not suffering from any mental infirmity. Moreover, the behavior clinic report

10

indicated that [Mr. Briggs] was competent to stand trial. Finally, a review of the protracted proceedings in this case reveal both the ample time in which [Mr. Briggs] could prepare his defense as well as myriad antics and approaches by [Mr. Briggs] to delay and otherwise frustrate an orderly trial. [Mr. Briggs'] complaint regarding a continuance to investigate a potential guilty but mentally ill plea is without merit.

In the same vein, [Mr. Briggs] at the eleventh hour at the beginning of trial, expressed desires to proceed non-jury and visit the crime scene. Again, these assertions are derivative of [Mr. Briggs'] claim of lack of preparedness – a claim that is wholly lacking merit given that [Mr. Briggs] always has legal counsel available to him as well as years which passed from the date of the crime in September 2000 to [Mr. Briggs'] apprehension by the authorities in 2003 and the commencement of trial in January 2006. . . . Nor, after hearing on his right to proceed *pro se*, was the trial court required to grant [Mr. Briggs'] request for a bench trial. The record is replete with [Mr. Briggs'] histrionics. The trial court properly denied [Mr. Briggs'] requests to . . . proceed non-jury.

June 5, 2007, Pa.R.A.P. 1925(a) opinion at 7-8 (citations omitted).

Attorney Nightingale ultimately did not argue to the Superior Court that Judge Allen erred in denying Mr. Briggs' request for a non-jury trial. He did, however, continue to advance to the Superior Court the claim that Judge Allen wrongly refused to continue Mr. Briggs' jury trial after he decided to represent himself. In rejecting that argument, the Superior Court stated:

[Mr. Briggs] contends he did not have adequate time to locate and subpoena witnesses and was otherwise unprepared for trial. . . .

[Mr. Briggs] was represented by Christopher Conrad, Esq., a highly experienced attorney who has tried numerous homicide cases. At the last minute,

11

however, on the first day of jury selection, [Mr. Briggs] informed the court he desired to proceed **pro se**. Following a thorough waiver of counsel colloquy during which the trial court specifically instructed [Mr. Briggs] that the trial would not be postponed as a result of his decision, the court granted [Mr. Briggs] permission to proceed **pro se**, and Attorney Conrad remained as standby counsel.

[Mr. Briggs] complains he was not given adequate time to prepare for trial and procure witnesses. However, as the trial court observed, this case had dragged on for years following [Mr. Briggs'] extradition from Saudi Arabia. "You've had a couple of years. And the trial is going forward. If you think that you can do a better job than him, then you just do the better job, but the trial is going forward. I'm not postponing it. I am not going to postpone anything." In addition, as the Commonwealth points out, [Mr. Briggs] had represented himself from August 2004 until March 2005, when Attorney Conrad was appointed as counsel.

There is no merit to [Mr. Briggs'] argument that he was afforded inadequate time to prepare a defense. Rather, the record supports the trial court's conclusion that [Mr. Briggs] was engaging in delay tactics: "Finally, a review of the protracted proceedings in this case reveal[s] both the ample time in which [Mr. Briggs] could prepare his defense as well as myriad antics and approaches by [Mr. Briggs] to delay and otherwise frustrate an orderly trial." "The record is replete with [Mr. Briggs'] histrionics."

Our review of the record reveals that the trial court actually put forth every effort to ensure that [Mr. Briggs] was able to secure witnesses and prepare for trial. [Mr. Briggs] complained he was prohibited from using the prison law library; the court ordered prison authorities to permit [him] full use of the law library for a minimum of five hours per week, as requested. [Mr. Briggs] requested an investigator to help him locate potential witnesses and serve subpoenas; the court appointed an investigator. [Mr. Briggs] stated that prison authorities were not allowing him to have contact visits

12

with the court-appointed investigator; the trial court issued an order directing prison authorities to permit [Mr. Briggs] to meet with the investigator.

Finally, [Mr. Briggs] has failed to demonstrate how he was prejudiced by the trial court's refusal to grant a continuance. [Mr. Briggs] mounted a vigorous defense and called witnesses. His decision to proceed *pro se* was made with the knowledge that the trial would not be further delayed. We find the trial court did not abuse its discretion in denying [Mr. Briggs'] request for a continuance.[ ]

Commonwealth v. Briggs, No. 2160 WDA 2006 at 12-15 (Pa. Super. Ct. June 11, 2008) (citations omitted).

In the end, the Superior Court affirmed Mr. Briggs' judgment of sentence. Though no petition for allowance of appeal ("PAA") to the Pennsylvania Supreme Court was initially filed, Mr. Briggs' right to file a PAA was eventually reinstated by the Honorable Kathleen A. Durkin. Through William Kaczynski, Esquire, Mr. Briggs filed a PAA, the matter was docketed by the Supreme Court at 293 WAL 2012, and the Supreme Court denied the PAA on July 2, 2013.

Mr. Briggs subsequently filed a timely *pro se* Post-Conviction Relief Act ("PCRA") petition on June 5, 2014. The instant matter was transferred to the undersigned on *September 16, 2019*, and the Court appointed Suzanne M. Swann, Esquire, to represent Mr. Briggs. Mr. Briggs filed the Amended Petition through Attorney Swann. Therein, Mr. Briggs asserted that Attorney Nightingale was ineffective for failing to raise before the Superior Court the claim that Judge Allen erred in refusing to allow Mr. Briggs to waive a jury trial. The Commonwealth filed an answer to Mr. Briggs' ineffective assistance of counsel

13

assertion, and this Court held a hearing on the Amended Petition on September 20, 2021.

At that hearing, Attorney Nightingale credibly testified that his normal practice when representing someone on appeal is "to review the transcripts and the records before [he] file[s] a brief[.]" See September 20, 2021, Transcript at 6. He also credibly explained that though he did not have a specific recollection of Mr. Briggs' case, the reason he did not advance Mr. Briggs' claim regarding a non-jury trial to the Superior Court was because he "must have concluded that [he] did not consider it meritorious." Id. at 5. According to Attorney Nightingale, "When [he] brief[s] issues to the Superior Court, [he] prefer[s] to move forward with the strongest issues, so that [he] do[esn't] dilute those stronger issues by raising multiple non-meritorious issues." Id. at 5-6. Thus, Attorney Nightingale believed that he did not raise the non-jury claim because he "made a professional judgment call in this case, that the issue lacked sufficient merit. And it would potentially dilute from other meritorious issues that [he] presented." Id.

This Court subsequently entered the Order denying the Amended Petition. Attorney Swan filed a timely notice of appeal on January 14, 2022. Mr. Briggs also filed a Pa.R.A.P. 1925(b) statement, which the Court deemed to be timely filed.

## II.     Relevant Factual Background

When affirming Mr. Briggs' judgment of sentence, the Superior Court

stated the following:

> Betty Foster ("Foster") testified that at approximately
> 7:00 p.m. on September 18, 2000, she saw two people
> wrestling or fighting inside a car in the parking lot of her
> housing complex. It was still light out. Foster saw [Mr.
> Briggs] exit the vehicle from the driver's side window,
> point a gun into the car and fire. Foster then saw [Mr.
> Briggs] remove his shoes and a brown paper bag from
> the vehicle, put his shoes on, and run from the scene.
> Later that evening, Foster picked [Mr. Briggs] out of a
> photo array. She also identified [Mr. Briggs] at trial as
> the shooter.
>
> Sean Embry ("Embry") is Foster's brother-in-law and was
> visiting at Foster's house the evening of the incident.
> Embry's wife, Lottie Foster, said there was a fight inside
> a car. Embry went to the front door of the house and
> observed two men "tussling pretty hard" in a car.
> Embry testified the two were "fighting real hard" one
> on top of the other. [Mr. Briggs], who was on top, fell
> out of the driver's side window. [Mr. Briggs] then got
> up, pointed his gun directly at the victim, and fired into
> the car window. Embry knew [Mr. Briggs] from the
> neighborhood and identified him at trial as the shooter.
>
> Although [Mr. Briggs'] finger and palm prints were
> found on both sides of the exterior of the victim's car,
> at time of arrest, [Mr. Briggs] denied knowing the victim
> or ever being in his vehicle. Dr. Abdulrezak Shakir, M.D.,
> of the Allegheny County coroner's office, testified that
> the victim, Joseph Looney, suffered gunshot wounds to
> the left arm and chest. Dr. Shakir testified that a single
> gunshot could have caused both wounds and, in fact,
> only one bullet was recovered from the victim's body.
> The bullet removed from the right side of the victim's
> chest punctured the victim's heart and would have
> caused death within approximately one minute. The
> victim had also suffered a laceration to the right side of
> his face consistent with being struck by a hard object.

15

Dr. Shakir testified that the cause of death was a gunshot wound to the victim's chest and manner of death was determined to be homicide.

[Mr. Briggs] presented several witnesses and also took the stand in his own defense. [Mr. Briggs] testified that on the date of the incident, the victim wanted to buy marijuana from him. [Mr. Briggs] got into the victim's car, and they pulled in to the parking lot. The victim asked [Mr. Briggs] if he had change for a hundred; [Mr. Briggs] said yes and reached into his left pocket to retrieve the money. At that point, the victim grabbed [Mr. Briggs'] wrist and, with his other hand, held a gun to [Mr. Briggs'] face. The victim demanded all of [Mr. Briggs'] money. To be brief, according to [Mr. Briggs'] testimony, a melee ensured, eventually concluding with [Mr. Briggs'] exit from the driver's side window. [Mr. Briggs] testified he hit his head on the pavement and blacked out for a few seconds; when he came to, he saw someone standing over him with his arm extended. He did not see the individual holding a gun. After [Mr. Briggs] left the scene, he heard a gunshot. [Mr. Briggs] subsequently learned that it was Amire Cox ("Cox"), since deceased, who supposedly came to [Mr. Briggs'] aid.

[Mr. Briggs] also presented the testimony of Michael Lynn ("Lynn"), who indirectly implicated Cox. Lynn testified he was with Cox in the area at the time of the incident. Cox left and headed towards the parking lot, and approximately three minutes later, Lynn heard two gunshots. Shortly after the second shot, Cox came running back down the hill. Lynn described him as "hyper" and sweating. Cox then ran towards the East Hills school.

Kenneth Dent ("Dent") testified to an argument between [Mr. Briggs] and Emby some months prior to the incident. [Mr. Briggs] called Dent to try to establish bias on the part of Embry. Embry recalled an incident between Embry's friend Doo-Jee and [Mr. Briggs] over some sort of marijuana transaction, but denied that he and [Mr. Briggs] had an argument.

16

Clearly, the evidence was sufficient to convict [Mr. Briggs] of murder in the first degree. Both Foster and Embry identified [Mr. Briggs] as the shooter and testified that after struggling with the victim in the vehicle and falling to the ground, [Mr. Briggs] got up, pointed his firearm directly at the victim and fired, hitting him in the chest. Although [Mr. Briggs] argue[d] that "the only evidence the Commonwealth presented that [he] was indeed the shooter was the testimony of Better Foster and Sean Embry", this was all the evidence the Commonwealth needed. The jury obviously did not believe [Mr. Briggs'] defense that somebody named Amire Cox, who died prior to trial, was the actual shooter, and neither eyewitness testified to seeing a third person at the scene.

The Commonwealth also presented evidence that after the shooting, [Mr. Briggs] fled the jurisdiction and was not found until 2003 in Saudi Arabia, approximately three years later. In addition, the Commonwealth established that [Mr. Briggs] lied to the police after his initial arrest when he stated that he did not know the victim, had never met the victim, and had never been in the victim's car.

See Briggs, No. 2160 WDA 2006 at 7-10.

## III.     This Court Did Not Err In Denying PCRA Relief.

In his Pa.R.A.P. 1925(b) statement, Mr. Briggs asserts: "The court erred in denying the [Amended Petition] insofar as Mr. Briggs established that [Attorney Nightingale] was ineffective for failing to raise a claim on appeal that the trial court abused its discretion in refusing to allow Mr. Briggs to waive a jury trial." That allegation fails.

"In order to be eligible for PCRA relief, [a petitioner] must prove by a preponderance of the evidence that his conviction or sentence resulted from one or more of the enumerated circumstances found at 42 Pa. C.S. §

17

9543(a)(2)." Commonwealth v. Hannible, 30 A.3d 426, 438 (Pa. 2011). Ineffective assistance of counsel claims are included within those circumstances, see 42 Pa. C.S. § 9543(a)(2)(ii), and when adjudicating said claims, courts must recognize that "counsel is presumed effective[,]" see Hannible, 30 A.3d at 439. "[T]he defendant bears the burden of proving ineffectiveness." Id.

To do so and to overcome the presumption that counsel was effective, a defendant "must demonstrate that: (1) the underlying substantive claim has arguable merit; (2) counsel whose effectiveness is being challenged did not have a reasonable basis for his or her actions or failure to act; and (3) the defendant suffered prejudice as a result of counsel's deficient performance." Id. Allegations of ineffectiveness will be denied "if the defendant's evidence fails to meet any one of these prongs." Id.

Trial courts are "not constitutionally prohibited from denying a defendant's request to waive a jury trial." Commonwealth v. Maxwell, 459 A.2d 362, 364 (Pa. Super. Ct. 1983). Rather, trial courts have discretion to permit such a waiver. Id. That exercise of discretion will be reviewed on appeal "on a case by case basis." Id.; see also id. at 364-65 (finding an abuse of discretion where the trial court's "sole justification for denying [a] request [to waive jury trial] was for means of judicial economy"); Commonwealth v. Kellum, 489 A.2d 758, 760 (Pa. Super. Ct. 1985).

18

Here, the record does not show that Judge Allen abused her discretion in denying Mr. Briggs' request for a bench trial. Mr. Briggs always contemplated a jury trial. He had one that ended in a mistrial, and he wanted to represent himself at his second trial in part because he believed he would have a tactical advantage over Attorney Conrad in appealing *to a jury*. See page 3, supra. Mr. Briggs' purported desire to proceed non-jury came at the eleventh hour and was, Judge Allen found, derivative of his asserted lack of preparedness. See pages 10-11, supra. Judge Allen, however, "put forth every effort to ensure that [Mr. Briggs] was able to secure witnesses and [to] prepare for trial." Briggs, No. 2160 WDA 2006 at 14. As set forth above and as found by the Superior Court, she ensured that Mr. Briggs had sufficient access to the law library, received an investigator to locate and subpoena witnesses, had contact visits with his court-appointed investigator, and even had the assistance of an extremely experienced attorney acting as standby counsel. See id. at 12-14.

Given the foregoing, which included her face-to-face observations and interactions with Mr. Briggs, Judge Allen concluded – and the Superior Court determined the "record support[ed] . . . [her] conclusion[,]" see id. at 13 – that Mr. Briggs' behavior, including his histrionics, constituted tactics designed "to delay and otherwise frustrate an orderly trial[,]" see pages 10-11, supra. Accordingly, she found, and the record establishes, that Mr. Briggs, who wanted to proceed to a jury trial and without counsel because he believed he could better appeal to the jury *pro se* – ultimately grounded his last-minute request for

19

a non-jury trial in gamesmanship crafted to obstruct the proper administration of justice. Notably, nothing in Mr. Briggs' testimony before the undersigned at the September 20, 2021, PCRA hearing credibly demonstrated the contrary or any error in Judge Allen's findings.

Judge Allen, therefore, did not err in denying Mr. Briggs a bench trial. She properly exercised her discretion, and Mr. Briggs' argument that Judge Allen improperly precluded him from proceeding non-jury lacks merit. Attorney Nightingale, moreover, reasonably did not advance that unmeritorious claim on direct appeal. Ineffective assistance of counsel under the circumstances presented here has not been proven.

## IV. Conclusion

Accordingly, Mr. Briggs wrongly contends that this Court erred in denying PCRA relief. For the foregoing reasons, the Order should be affirmed. The Department of Court Records, Criminal Division, is ordered and directed to transmit the record in the above-captioned matter to the Pennsylvania Superior Court without delay.

BY THE COURT:

Date: 3|17|22

_____, J.
Susan Evashavik DiLucente

cc:   Suzanne M. Swan, Esquire
      310 Grant Street
      Suite 823
      Pittsburgh, PA  15219

20

Deputy District Attorney Michael W. Streily
Office of the District Attorney
401 Allegheny County Courthouse
Pittsburgh, PA  15219